## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INFOSPHERE CONSULTING, INC., d/b/a/ HABIBI, | **Case No. 19–cv–15577–MCA–ESK** |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| HABIBI LIFE, LLC, *et al.*, | |
| Defendants and | |
| SHAHADA KARIM, | |
| Plaintiff-Intervenor | |
| v. | |
| INFOSPHERE CONSULTING, INC., d/b/a/ HABIBI | |
| Intervenor-Defendant | |

**KIEL**, **U.S.M.J.**

     **THIS MATTER** comes before the Court on the motion (Motion) by plaintiff Infosphere Consulting, Inc. d/b/a Habibi (Infosphere) to disqualify Chiesa Shahinian & Giantomasi PC (CSG) as counsel for defendants Habibi Life, LLC and Kahled Atallah (collectively, Habibi Life), and plaintiff-intervenor Shahada Karim (Karim). (ECF No. 35.)   Habibi Life and Karim oppose the Motion.   (ECF No. 47.)   For the following reasons, the Motion is **DENIED**.

## PROCEDURAL HISTORY AND BACKGROUND

### I.   PROCEDURAL HISTORY

The initial complaint was filed on July 18, 2019 and amended on August 9, 2019.   (ECF Nos. 1, 4.)   The amended complaint asserts claims against Habibi Life for trademark infringement under 15 U.S.C. § 1051, *et seq.*, for unfair competition in violation of N.J.S.A. 56:4–1, and for common law unfair competition, misappropriation, and dilution.   (*Id.*)   Infosphere alleges Habibi Life's use of the name "Habibi Life" violates Infosphere's trademark and has caused and will continue to cause confusion for consumers.   Infosphere claims it has suffered damages as a result of the infringement.   (ECF No. 4 p. 22–24.)

On September 24, 2019, Karim moved to intervene under Federal Rule of Civil Procedure ("Rule") 24.   (ECF No. 16.)   Infosphere consented to Karim's intervention. (ECF No. 18.)   The Court granted Karim's motion to intervene on October 25, 2019. (ECF No. 21.)   Infosphere now moves to disqualify CSG as counsel for Habibi Life and Karim because it believes there is a non-waivable conflict under Rule of Professional Conduct (RPC) 1.7.   (ECF No. 35.)

Habibi Life and Karim argue that: (1) Infosphere lacks standing to bring a motion to disqualify CSG because Infosphere is not a current or former client of CSG; (2) the two parties represented by CSG are not directly adverse; and (3) CSG's responsibilities to either party is not materially limited.   (ECF No. 47.)   Habibi Life and Karim also highlight that a concurrent conflict under RPC 1.7(a) is waivable pursuant to RPC 1.7(b), and that Karim was fully informed of the consequences of concurrent representation and entered into agreements memorializing the terms of the concurrent representation.   (*Id.*)   Karim also consulted with separate trademark counsel in negotiations with Habibi Life and before consenting to CGS's joint representation.   (*Id.*; ECF No. 47-1 (Karim Decl.) ⁋ 9.)

In its reply brief, Infosphere argues that: (1) the agreements do not obviate the conflict; (2) Habibi Life and Karim's interests are at odds; and (3) Karim's interests

are materially limited by the joint representation because Infosphere is unable pursue a settlement only with Karim.   (ECF No. 55.)

## II.   AGREEMENTS BETWEEN HABIBI LIFE AND KARIM

Habibi Life and Karim entered into agreements, which memorialize their intentions to align their interests for this lawsuit and for their relationship outside the scope of this lawsuit. They entered into a "Coexistence Agreement" acknowledging one another's ownership rights and use of their respective trademarks.   (ECF No. 48 Ex. A ¶¶ 1–2.)   The Coexistence Agreement provides for a transition period, after which they would use different labels on and names for their respective products.   (*Id.* ¶ 4.)   Karim agreed to seek to intervene in this case and to file a petition to cancel Infosphere's trademark registration.   (*Id.* ¶ 6.)   Habibi Life agreed to pay Karim's attorneys' fees and costs relating to this case, which would be offset by any recovery by Karim.   (*Id.* ¶ 7.)

Habibi Life and Karim also entered into a "Trademark Assignment."   Under this agreement, Habibi Life assigned all of its rights to the mark "HABIBI" to Karim. (*Id.* p. 12.)   In another agreement titled the "Domain Name Transfer Agreement," Karim transferred all of her rights to the domain name www.habibilife.org to Habibi Life.   (*Id.* p. 13.)   Through a Consent Agreement, Habibi Life and Karim recognized the validity of each other's marks and consented to one another's respective use of their own marks.   (*Id.* p. 16.)

Finally, in a "Joint Representation Letter," Habibi Life and Karim agreed to be jointly represented by CSG in this case.   (ECF No. 47 p. 13; ECF. No. 47–1 (Karim Decl.) ¶ 13; ECF. No. 47-2 (Atallah Decl.) ¶¶ 9–10.)   Habibi Life and Karim were represented by separate counsel in the negotiations and preparation of the agreements.   (ECF No. 47 pp. 12–14; Karim Decl. ¶¶ 9–13; ECF. No. 47–2 (Atallah Decl.) ¶ 7.)[1]

---

[1] The Coexistence Agreement, Trademark Assignment, Domain Name Transfer Agreement, Consent Agreement, and the Joint Representation Letter will be collectively referred to as the "Agreement."

## ANALYSIS

### I.   CONFLICT RULES AND INTERPRETATION

A motion for disqualification for an alleged conflict of interest requires the balancing of the need to maintain the highest standards of the profession with a client's right to freely choose counsel.   *Steel v. Gen. Motors Corp.*, 912 F.Supp. 724, 733 (D.N.J. 1995).   A party seeking disqualification carries a heavy burden of proof before a lawyer is disqualified, as these motions are disfavored.   *Phelps v. D & S Consultants, Inc.*, No. 09–06386, 2010 WL 3186241, at *5 (D.N.J. Aug. 10, 2010); *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F.Supp.2d 221, 226 (D.N.J. 2001). "Such disfavor results from the reality that motions to disqualify are sometimes made solely for 'tactical reasons,' and that even when they are made in good faith, motions to disqualify cause inevitable delay in the underlying proceedings and create additional hardships to the opposing party." *Prudential Ins. Co. of Am. v. Chelchowski*, No. 16–00258, 2017 WL 1549466, at *3 (D.N.J. Apr. 28, 2017) (*citing Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F.Supp. 341, 345 (D.N.J. 1996)).

To prevent unjust results, motions to disqualify require careful scrutiny of the facts surrounding the alleged conflict.   *High 5 Games, LLC v. Marks*, No. 13–07161, 2018 WL 2278103, at *2 (D.N.J. May 18, 2018).   The party seeking to disqualify has the burden to show that disqualification is justified and necessary.   *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993).   A party may raise a conflict of interest even when that party is not a client or former client of the allegedly conflicted lawyer.   *Delso v. Trs. For Ret. Plan For Hourly Emps. of Merck & Co.*, No. 04–03009, 2007 WL 766349, at *5 (D.N.J. Mar. 6, 2007).

Local Civil Rule 103.1(a) provides that the conduct of members of the bar admitted to practice before this Court is governed by the RPC, as revised by the Supreme Court of New Jersey.   *L.Civ.R.* 103.1(a).   RPC 1.7 provides guidance in resolving issues arising from potential concurrent conflicts:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or; (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation … .  When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved.

N.J. Rules Prof'l Conduct R. 1.7.   RPC 1.8(g) addresses potential conflicts where a proposed settlement arises in a case with concurrent representation of parties:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients … unless each client gives informed consent after a consultation that shall include disclosure of the existence and nature of all the claims … involved and of the participation of each person in the settlement.

N.J. Rules Prof'l Conduct R. 1.8.

## II.   APPLICATION

As a threshold issue, Habibi Life and Karim take the position that Infosphere lacks standing to challenge CSG's dual representation because Infosphere is not a former client of CSG.   (ECF No. 47 p. 21.)   We disagree.   Adversaries, as well as former clients, may raise conflict of interest concerns.   *See Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F.Supp.2d 418, 431 (D.N.J. 1998) (holding that adversaries have "standing to raise conflict of interests issues"); *Dantinne v. Brown*, No. 17–00486, 2017 WL 2766167, at \*1 n.1 (D.N.J. June 23, 2017) (holding that "a conflict may be raised by a party who is not a client or former client of the allegedly conflicted lawyer").

As to the substantive issue, the inquiry begins by addressing whether CSG's representation of Habibi Life and Karim creates a concurrent conflict of interest pursuant to RPC 1.7.   A concurrent conflict of interest exists where one client's interests are "directly adverse to another client" or when there is a "significant risk that the representation … will be materially limited."   RPC 1.7(a).

Here, Habibi Life and Karim's interests are not directly adverse.   Rather, their interests are presently aligned against Infosphere.   Both assert that Infosphere is not the rightful owner of the HABIBI mark.   Also, because their interests are aligned against Infosphere, there is no significant risk that CSG's representation of Karim or Habibi Life will be "materially limited."   Indeed, throughout this litigation, the Court has not observed any instance where the interests of Habibi Life and Karim have diverged.

Even if this Court were to find that a concurrent conflict exists, the parties' Agreement satisfies the requirements of RPC 1.7(b) because they each gave informed consent after consulting with separate counsel.   *High 5 Games, LLC v. Marks* is instructive.   In that case, the plaintiff moved to disqualify defense counsel because two of the defendants' patent defenses created an alleged conflict of interest.   *Id*. at *2.   In denying a motion to disqualify defense counsel, the court reasoned that there was no showing of an adverse relationship between the defendants, and even if a conflict did somehow exist, all defendants had consented to concurrent representation pursuant to RPC 1.7(b).   *Id*. at *4.   The court observed that the defendants were united in seeking invalidity of the patent and defending against other claims in the case.   *Id*.

Similarly, here, Habibi Life and Karim agreed to terms and conditions for joint representation after being fully informed of the potential consequences.   (ECF No. 47 p. 13; Karim Decl. ⁋ 14; Atallah Decl. ⁋⁋ 10.)   While Karim, who uses the "HABIBI" mark, may have interests adverse to Habibi Life in the future, that possibility is speculative and not relevant at this point.

Infosphere, moreover, in support of its Motion, refers to the Court's Order of October 25, 2019 (ECF No. 21), which granted Karim's motion to intervene.   In the

Order, the Court noted that "the existing parties, whose interests are adverse to Ms. Karim's, cannot adequately represent [Karim]."   (ECF No. 55 at p.4.)   That finding, however, was in support of the Court's decision to permit Karim's intervention.   It was not, as Infosphere implies, a prohibition of or an advisory opinion concerning CSG's representation of Karim in this case.   Indeed, CSG filed the motion to intervene on Karim's behalf. (ECF No. 16.) Despite being aware of CSG's representation of Karim, Infosphere consented to the intervention and failed to raise any objection to CSG's representation of Karim.   (ECF No. 18.)

Infosphere also complains that because of CSG's dual representation, it will be unable to reach a settlement with Karim, separate from a global settlement with both Habibi Life and Karim.   There is no basis to conclude that CGS's dual representation prohibits a settlement between Infosphere and Karim.   Indeed, RPC 1.8 will guide CSG in its ethical obligations relating to settlement discussions in this case.

Accordingly,

**IT IS** on this **7th** day of **August 2020  ORDERED** that:

1.      The Motion (ECF No. 35) is **DENIED**.

2.      The Clerk of the Court is directed to terminate the Motion at **ECF No. 35**.

      /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**